UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| D.A.,[1] | Case No. 25-cv-00143-PHK |
| Plaintiff, | **ORDER REMANDING CASE** |
| v. | |
| FRANK BISIGNANO, | |
| Defendant. | |

**INTRODUCTION**

Plaintiff D.A. brings this action under the Social Security Act, 42 U.S.C. § 405(g) ("the Act"), seeking judicial review of a final decision by the Commissioner of the Social Security Administration, Defendant Frank Bisignano ("Commissioner"), denying Plaintiff's applications for a period of disability, disability insurance benefits, and supplemental security income. [Dkt. 1]. The Parties have consented to proceed before a Magistrate Judge for all purposes, including the entry of final judgment, under 28 U.S.C. § 636(c). *See* Dkts. 6-7. Plaintiff has filed an Opening Brief, the Commissioner has filed a Response Brief, and Plaintiff has filed a Reply Brief. [Dkt. 14; Dkt. 16; Dkt. 19]. The Commissioner has also filed the Administrative Record. [Dkt. 11 (hereinafter "AR")].

After carefully analyzing the briefs, the record, and the applicable law, the Court **REVERSES** the Commissioner's decision and **REMANDS** the case for further proceedings consistent with this Order.

---

[1] In actions involving requested review of a decision by the Commissioner of the Social Security Administration, the Court generally uses the initials of the plaintiff's first and last names in the Court's public orders out of an abundance of caution and regard for the plaintiff's potential privacy concerns.

United States District Court
Northern District of California

**BACKGROUND**

The following background focuses only on the factual matters and procedural history that are relevant to the Court's analysis herein.

On January 11, 2022, Plaintiff protectively filed an application for a period of disability and disability insurance benefits, pursuant to Title II of the Act (with a minor amendment to the application dated June 23, 2022). [AR 360-71]. On January 27, 2022, Plaintiff protectively filed an application for supplemental security income, pursuant to Title XVI of the Act. [AR 372-79]. In the applications, Plaintiff alleged that he had been unable to work, since November 14, 2021, due to arrythmia, high blood pressure, and gastroesophageal reflux disease (GERD). [AR 218, 391]. Plaintiff's applications were denied, initially on June 21, 2022, and upon reconsideration on November 16, 2022. [AR 219-64]. Plaintiff timely requested a hearing which was held telephonically on November 1, 2023 before Administrative Law Judge Enrico Alis ("ALJ"). [AR 189-218, 281-82, 338]. An unfavorable decision was issued by the ALJ on January 31, 2024. [AR 14-30]. Plaintiff filed a request for review by the Appeals Council, which was denied on December 2, 2024. [AR 1-7]. On January 6, 2025, Plaintiff commenced this action for judicial review of that final decision. [Dkt. 1; Dkt. 14].

Plaintiff was born on December 23, 1966; he was fifty-four years old on the alleged disability onset date. [AR 360, 484]. Plaintiff was born and raised in Ghana, and immigrated to the United States in 2001. [AR 478]. After moving to the United States, Plaintiff met his partner and had two children. [AR 1229-30]. Plaintiff worked as a prep cook and kitchen staff at restaurants around the Bay Area, and briefly as a security guard. *Id.*

Plaintiff experienced hypertension and unexplained weight loss, and was diagnosed with anemia, colon polyps, and complications from a benign prostatic hyperplasia. [AR 43-47, 68-74, 961]. In 2018, Plaintiff reportedly experienced a decline in health and was no longer able to work as a security guard. [AR 1229-30]. Plaintiff briefly returned to work as a prep cook before quitting again in 2019 to focus on his health. [AR 1160, 1166]. Plaintiff was diagnosed with sickle cell disease in 2021. [AR 1152-54].

Plaintiff became homeless on January 1, 2022. [AR 373, 1160-61]. Plaintiff reportedly

became depressed after his children went to live with their mother when Plaintiff became homeless, exacerbating his physical health conditions. *Id.*

Plaintiff's hearing before the ALJ was held on November 1, 2023. Plaintiff appeared and testified at the hearing, along with his attorney. [AR 189]. The ALJ heard testimony from a vocational expert, Alan Cummings. [AR 190].

At the hearing, Plaintiff testified that he had been unable to work since 2019 due to his worsening health conditions. [AR 196]. Plaintiff testified to visiting St. Mary's and other shelters in order to receive assistance with food, housing, and cleaning. [AR 197]. Plaintiff testified that his worsening health conditions included sickle cell disease and high blood pressure, causing him to not be able to go near a fire. [AR 198].

Plaintiff testified that he was not meeting the demands of his job as a grill cook, because he would lose his breath after five minutes, would have to take three or four breaks per shift, and would leave work early at least two times per month. [AR 199]. Plaintiff testified that he did not rotate positions and worked at the grill for his entire shift unless he was doing prep work, for which he could only lift light items. [AR 200]. Plaintiff testified that he was unable to lift more than twenty pounds normally. [AR 201]. Plaintiff testified that he would regularly have to sit down during his shifts, or go to "the cold room" to take a break. *Id.* Plaintiff testified that he was able to stand for no more than one hour continuously, before he became unstable and weak on his feet. *Id.* Plaintiff testified that he enjoyed working and would continue working but for his health conditions. [AR 210].

Plaintiff testified that his sickle cell disease has not improved upon seeing a doctor. [AR 202]. Plaintiff testified that he saw a doctor, Dr. Weiwei from Castro Valley, who informed him that he had prostate cancer. [AR 203]. Plaintiff testified that he was currently undergoing diagnostic testing for prostate cancer. [AR 211]. Plaintiff clarified that he had not formally been diagnosed with prostate cancer, but had elevated PSA levels. [AR 212]. Plaintiff testified that his doctors were still trying to find a medication that "worked" for him. *Id.* Plaintiff testified that the doctors he had been seeing told him he would have to keep taking his medication, but did not tell him that the medication had improved any of his conditions. [AR 209].

United States District Court
Northern District of California

3

Plaintiff testified to having difficulty urinating.  [AR 203].  He testified that he woke up to urinate four times per night.  *Id.*  He testified that it took him a "long time" to get out of the bathroom, "trying to get something out of [his] bowels."  *Id.*  Plaintiff testified that these symptoms had not improved with medication, which he took "a lot" of.  *Id.*  Plaintiff testified to having difficulty sleeping due to prostate pain.  *Id.*  Plaintiff testified that his doctor at LifeLong had prescribed medications to make it easier for him to sleep at night.  *Id.*  Plaintiff testified to still having difficulty sleeping at night while on the medication, due to frequent urination.  [AR 204].  Plaintiff testified to having no difficulties urinating in the daytime.  *Id.*  Plaintiff testified that he saw a urologist twice per month.  [AR 210].  He testified to seeing his primary care provider at LifeLong "sometimes" on the phone if he wanted his medications refilled, and twice per month in person.  *Id.*

Plaintiff testified to experiencing anemia and body weakness, generally feeling "feeble" because of his difficulties with lifting and shortness of breath.  [AR 206].  Plaintiff testified that his health had not improved with medical treatment, and that he experienced shortness of breath when going down a flight of stairs.  [AR 202].  He testified to having trouble walking.  *Id.*  He testified that he was able to walk to the bus stop.  *Id.*  Plaintiff testified that even if the temperature was hot, he felt cold, and that he experienced loss of appetite.  *Id.*  Plaintiff testified that he did not "eat right." *Id.*  Plaintiff testified that his vision was blurry, and that he required glasses to read.  [AR 208].  Plaintiff testified to having to take a break from reading every twenty minutes.  *Id.*

Plaintiff testified that when he tried to lift something, his heart would start beating rapidly and he was unable to lift it, even with objects under twenty pounds.  *Id.*  Plaintiff testified that, even with prescribed medication, his heart would beat irregularly, he would sweat profusely, and he would have to sit down.  [AR 209].  Plaintiff testified to frequently trying new medications, one of which had "calm[ed] him down a little bit."  [AR 210].  Plaintiff testified that he was not worried about having a heart attack while on medication, but that he still was unable to lift more than twenty pounds.  *Id.*

Plaintiff testified to seeing a therapist at LifeLong for depression, where participating in therapeutic activities such as "breathing exercises" had helped improve his mental health, although he still struggled with depression.  [AR 205].  Plaintiff testified to having trouble focusing on one

task, and that he often had to do tasks twice in order to fully complete them. [AR 206]. Plaintiff denied experiencing any memory loss, but testified that he sometimes had trouble following directions or remembering things like important documents. [AR 207]. Plaintiff testified that his health conditions had no impact on his social life. *Id.* Plaintiff testified that he attended therapy once every two weeks. [AR 210].

On January 31, 2024, the ALJ issued a written decision which followed the Commissioner's five-step, sequential evaluation process for determining the merits of Plaintiff's application. [AR 17-25]. The five-step analysis requires the ALJ to consider whether the claimant: (1) has engaged in "substantial gainful activity" during the alleged period of disability; (2) has a medically determinable impairment or combination of such impairments that is "severe;" (3) has a condition that meets or equals the severity of a listed impairment; (4) has the residual functional capacity ("RFC") to return to their past relevant work; and, if not, (5) can perform other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Wischmann v. Kijakazi*, 68 F.4th 498, 504 & n.3 (9th Cir. 2023).

In the written decision issued on January 31, 2024, the ALJ determined, at step one, that Plaintiff has not engaged in substantial gainful activity since November 14, 2021, the alleged disability onset date. [AR 19]. At step two of the analysis, the ALJ found that Plaintiff suffered from one severe impairment, essential hypertension. *Id.* The ALJ further found that Plaintiff suffered from several non-severe physical health impairments, including benign prostatic hypertrophy, sinus rhythm with marked sinus arrhythmia, GERD, gastritis, and hemoglobin sickle cell disease (Hb SC). [AR 20]. The ALJ found that Plaintiff suffered from a medically determinable mental impairment, specifically major depressive disorder, but found that this impairment was non-severe. [AR 20-21].

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [AR 22].

Prior to reaching step four, the ALJ assessed Plaintiff's RFC and found him capable of performing the full range of work at a medium exertional level. *Id.*

5

In establishing this RFC, the ALJ evaluated Plaintiff's subjective allegations of his pain and other symptoms, the objective medical evidence, and the medical opinion evidence. [AR 18-25]. The ALJ determined that, while Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, Plaintiff's testimony regarding the intensity, persistence, and limiting effects of the symptoms was "not entirely consistent with the medical evidence and other evidence in the record." [AR 23]. The ALJ likewise concluded that the objective medical evidence did not support the existence of limitations greater than those set forth in the RFC assessment. [AR 23-25].

In reaching these conclusions, the ALJ evaluated the medical opinion evidence. *Id.* The ALJ first discussed the opinions from state agency medical consultants Gurcharan Singh, M.D., and Lawrence Landwehr, M.D., finding them to be "persuasive overall." [AR 24]; *see* AR 219-34.

The ALJ next discussed the opinion from a treating nurse, Alayna Liptak, FNP, dated November 2, 2023, regarding her assessment of Plaintiff's physical and mental limitations. [AR 24]; *see* AR 1412-24. The ALJ summarized Nurse Liptak's findings: that Plaintiff "has sickle cell anemia, which makes exertion difficulty due to decreased oxygen transport," that Plaintiff could "lift less than 10 pounds frequently," "stand and walk for less than 2 hours," "frequently stoop (bend), kneel, and crouch," "occasionally crawl and climb stairs/ladders," should "avoid moderate exposure to extreme cold and hazards," and "would be absent from work more than three times a month." [AR 24]. Nurse Liptak opined that "pain or treatment would interfere with [Plaintiff's] concentration or pace of work 50% of the day." *Id.*

For mental limitations, Nurse Liptak found that Plaintiff had "depression and anxiety," "mild limitation[s]" in his ability to understand information, and "mild to moderate" limitations in concentration and ability to manage himself. *Id.* Nurse Liptak opined further that Plaintiff's depression and anxiety "affect[] his ability to complete activities of daily living and work," and cause him "decreased energy and motivation," making focus and concentration difficult. *Id.* The ALJ found Nurse Liptak's opinion "unpersuasive." *Id.*

At step four, the ALJ determined that Plaintiff was capable of performing past work as a short order cook. [AR 25]. The ALJ categorized this work as "substantial gainful activity,"

"performed long enough for [Plaintiff] to achieve average performance," and "performed within the relevant period." *Id.* The ALJ pointed to the vocational expert's testimony in determining that an individual with the "same age, education, work experience, and a more restrictive residual functional capacity[] than [Plaintiff] could perform the position of Short Order Cook as actually and generally performed." *Id.*

For the aforementioned reasons, the ALJ concluded that Plaintiff was not under a "disability," as defined by the Act, and denied Plaintiff's applications for a period of disability, disability insurance benefits, and supplemental security income. *Id.* That denial prompted Plaintiff's request for judicial review. *See* Dkt. 1; AR 1-8.

### STANDARD OF REVIEW

A district court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a hearing." 42 U.S.C. § 405(g). The Court's review in such cases is limited to determining: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner's decision comports with relevant legal standards. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006) ("We will uphold the Commissioner's denial of benefits if the Commissioner applied the correct legal standards and substantial evidence supports the decision."); *accord Woods v. Kijakazi*, 32 F.4th 785, 788 (9th Cir. 2022); *see generally* 42 U.S.C. § 405(g).

"Substantial evidence" is "'more than a mere scintilla' but only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Woods*, 32 F.4th at 788 (quoting *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019)). "Overall, the standard of review is highly deferential." *Kitchen v. Kijakazi*, 82 F.4th 732, 738 (9th Cir. 2023) (quoting *Rounds v. Comm'r*, 807 F.3d 996, 1002 (9th Cir. 2015)); *see Biestek*, 587 U.S. at 103 ("[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high."). In evaluating whether substantial evidence supports a finding, the Court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir.

United States District Court
Northern District of California

7

United States District Court
Northern District of California

1998). Any conflict in the evidence is to be resolved by the ALJ, and not the Court. *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022) ("Where evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed.").

**ANALYSIS**

As summarized above, the ALJ's January 31, 2024 written decision under review followed the Commissioner's five-step, sequential evaluation process for determining the merits of Plaintiff's application. [AR 17-25]; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Under this analysis, the claimant has the burden to establish a *prima facie* case of disability at steps one through four. *Triechler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1096 n.1 (9th Cir. 2014) (quoting *Hoopai v. Astrue*, 499 F.3d 1071, 1074-75 (9th Cir. 2007)). The burden then shifts to the Commissioner, at step five, to show that the claimant retains sufficient RFC to perform work in the national economy, given the claimant's age, education, and work experience. *Id.*

A finding that a claimant is "disabled" or "not disabled" at any point in the five-step review is conclusive and terminates the analysis. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520). To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. 42 U.S.C. §§ 423(d)(1)(A), (2)(A).

Plaintiff challenges the ALJ's decision (which became the Commissioner's final decision for purposes of judicial review) on several grounds. First, Plaintiff argues that the ALJ incorrectly identified several of Plaintiff's impairments as non-severe, failing to consider the combined effect of those impairments. [Dkt. 14 at 4-8]. Second, Plaintiff argues that the ALJ erred by "assigning no persuasive value to medical opinions from the Plaintiff's primary treatment provider, and full persuasive value to state agency medical consultants who issued prior administrative findings." *Id.* at 8-15. Third, Plaintiff argues that the ALJ failed to provide "specific, clear or convincing reasons" for discounting Plaintiff's allegations and testimony relating to the severity of his physical and mental impairments. *Id.* at 15-19. Fourth, Plaintiff argues that the ALJ's RFC determination was not based on substantial evidence, because the evidence in the record "supports a more restrictive RFC with additional exertional and nonexertional limitations." *Id.* at 19-23. Plaintiff argues that

the Court should "remand for benefits or further proceedings," due to the ALJ's errors in determining Plaintiff's RFC. *Id.* at 23-24.

The Commissioner argues, in response, that the ALJ properly considered the entire evidentiary record and followed the applicable, controlling law in determining that Plaintiff is not disabled for purposes of the Act. [Dkt. 16 at 2-12].

The Court addresses each of Plaintiff's asserted grounds for reversal in turn.

## I.    Whether the ALJ Correctly Determined the Severity of Plaintiff's Impairments

As summarized above, Plaintiff argues that the ALJ incorrectly identified several of Plaintiff's impairments as non-severe, failing to consider the combined effect of those impairments. [Dkt. 14 at 4-8]. Plaintiff's arguments focus on both the step two and step three analyses.

### A.  Step Two Analysis

Plaintiff first argues that the ALJ erred at step two by failing to find the following impairments severe at that step: "benign prostatic hypertrophy (BPH) with associated symptoms such as urinary frequency, urgency, intermittency, incomplete emptying, straining, and nocturia three times a night; weight loss; sickle cell anemia; back pain; and depression." *Id.* at 4. Plaintiff argues that the ALJ's failure to discuss all of Plaintiff's impairments at step two constitutes reversible error, asserting that "the ALJ is required to consider the combined effects of all severe impairments at step two," and that the ALJ should have "consider[ed] all evidence of impairments in determining severe impairments at step two." *Id.* at 2. Finally, Plaintiff argues that the ALJ should have found Plaintiff's symptoms medically equal to a listed impairment. [Dkt. 19 at 2].

At step two, the claimant bears the burden of showing that they have a medically severe impairment or combination of impairments. *See* 20 C.F.R. § 416.920(a)(4)(ii), (c). An impairment is considered "severe" where it "significantly limits [a claimant's] physical or mental ability to do basic work activities. *Id.* "An impairment is not severe if it is merely 'a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting S.S.R. No. 96–3(p) (1996)). Basic work activities mean "the abilities and aptitudes necessary to do most jobs . . .

9

such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling."  20 C.F.R. §§ 404.1522(b), 416.922(b).

The purpose of the analysis at step two is "to screen out weak claims."  *Bowen v. Yuckert*, 482 U.S. 137, 146–47 (1987).  "It is not meant to identify the impairments that should be taken into account when determining the RFC."  *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017).

Plaintiff argues that the ALJ committed reversible error by incorrectly classifying Plaintiff's BPH, weight loss, sickle cell anemia, back pain, and depression as non-severe impairments.  [Dkt. 14 at 4-6].  However, a claimant does not prove harmful error by merely asserting that certain impairments should have been identified as severe, and courts have declined to find reversible error at step two for this reason.  *See, e.g.*, *Heller v. Comm'r of Soc. Sec. Admin.*, No. CV-17-00243-TUC-DTF, 2018 WL 4377162, at *5 (D. Ariz. Sept. 14, 2018) ("Heller's argument that the ALJ should have determined her cardiac condition to be severe and if the ALJ had he would have 'found greater limitations in the RFC' fails.").

Significantly, as noted above, the ALJ found Plaintiff's essential hypertension to be a severe impairment.  [AR 19].  Thus, the ALJ decided step two in Plaintiff's favor, at least in part.  As a result, to the extent that Plaintiff argues that the ALJ erred in determining the severity of Plaintiff's impairments, any such error is harmless.  *See Buck*, 869 F.3d at 1048-49 ("If step two is decided in favor of the plaintiff, the plaintiff is not prejudiced and any alleged step two error is harmless[]"); *Raquel P. v. Kijakazi*, No. 22CV2024-BEN-SBC, 2023 WL 8656915, at *4 (S.D. Cal. Dec. 14, 2023) ("As long as the ALJ makes a finding of at least one severe impairment, a claimant is not prejudiced at the step two stage and thus any error is harmless.").  Therefore, because any error by the ALJ with regard to the other asserted impairments did not legally prejudice Plaintiff, the Court finds no harmful error in the ALJ's classifications at step two.

Plaintiff also argues that the ALJ should have discussed all of Plaintiff's impairments and associated symptoms (including their combined effects) at step two, and that the ALJ's failure to do so constitutes reversible error.  [Dkt. 14 at 2-8].  However, an ALJ is not required to discuss every impairment at step two, so long as the impairments are considered in the RFC.  *Buck*, 869 F.3d at 1048-49 ("At step two, an ALJ is not required to identify and discuss every impairment considered

[in] the RFC determination."). Even if the ALJ committed error in failing to discuss all of Plaintiff's impairments at step two, the error would be harmless, because the ALJ discussed the remaining impairments (such as Plaintiff's back pain and depression) at later steps. *See* AR 22-25. As the Ninth Circuit has recognized, "if an ALJ fails to discuss an impairment at step two, but discusses that impairment in a later step, the ALJ has committed a harmless error." *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007); *see also Williams v. Colvin*, 24 F. Supp. 3d 901, 917 (N.D. Cal. 2014); *Miner v. Berryhill*, 722 F. App'x 632, 633 (9th Cir. 2018).

**B. Step Three Analysis**

Plaintiff next argues that the ALJ erred by failing to find a listed impairment at step three of the evaluation. According to Plaintiff, the ALJ erred by "not tak[ing] all of Plaintiff's impairments into account when he failed to find that Plaintiff met a listing, and when he found an RFC that did not include any nonexertional limitations." [Dkt. 19 at 2].

At step three of the evaluation, the claimant "bears the burden of proving that he has an impairment that meets or medically equals the criteria of a listing." *Reedom v. Comm'r of Soc. Sec.*, No. 1:21-CV-01645-SAB, 2022 WL 17406415, at *7 (E.D. Cal. Dec. 2, 2022). "An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).

Here, Plaintiff did not argue in his Opening Brief that his symptoms medically equaled a listing. *See generally* Dkt. 14. Plaintiff's Reply Brief, for the first time, mentions that the ALJ "failed to find that Plaintiff met a listing," but Plaintiff presents no detailed theory regarding which listing would be met by Plaintiff's impairments. [Dkt. 19 at 2]. Since Plaintiff insufficiently attempted to establish that his symptoms met a specific listed impairment, the ALJ did not err in failing to find that a listing was met. *See Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001) (rejecting claimant's theory that his symptoms of seizure disorder and mental retardation equaled a listing, where claimant did not offer a plausible theory or point to any evidence that his symptoms combined to equal a listed impairment).

In sum, the Court finds that the ALJ did not commit reversible error in classifying Plaintiff's hypertension as severe, while also classifying Plaintiff's other impairments as non-severe. Additionally, the Court finds that the ALJ's failure to discuss all of Plaintiff's impairments at step two was harmless error, since they were discussed in the RFC. Finally, because Plaintiff failed to sufficiently demonstrate how or why his impairments met or medically equaled a listing, the ALJ did not commit reversible error in finding that Plaintiff's symptoms were insufficient to meet a listed impairment at step three.

## II. Whether the ALJ Erred in Evaluating the Medical Source Opinions

Plaintiff next argues that the ALJ erred by "assigning no persuasive value to medical opinions from the Plaintiff's primary treatment provider, and full persuasive value to state agency medical consultants who issued prior administrative findings." [Dkt. 14 at 8-15]. Plaintiff thus challenges the ALJ's RFC determination on two bases. First, Plaintiff argues that the ALJ failed to properly evaluate and weigh the medical source opinion from treating Nurse Liptak. *Id.* Second, Plaintiff argues that the ALJ failed to analyze whether medical opinions from Dr. Singh and Dr. Landwehr were supported by and consistent with the record evidence. *Id.* at 14-15.

The ALJ has a duty to evaluate all medical source opinions and "evaluate their persuasiveness" based on five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors that tend to support or contradict a medical opinion," such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA] disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(a), (c)(1)-(5), 416.920c(a)-(c); *see also Woods*, 32 F.4th at 787.

"The 'most important factors' that the agency considers when evaluating the persuasiveness of medical opinions are 'supportability' and 'consistency.'" *Woods*, 32 F.4th at 791 (quoting 20 C.F.R. § 404.1520c(a)). "Supportability" addresses how closely connected a medical opinion is to the evidence and the medical source's explanations: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinion(s) or prior medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1); *Woods*, 32 F.4th at

12

791-92 ("Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'").  "Consistency," on the other hand, compares a medical opinion to the evidence: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. § 404.1520c(c)(2); *Woods*, 32 F.4th at 792 ("Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'").  The ALJ must explain in their decision "how persuasive" they find each medical source opinion and must explicitly discuss address how they "considered the supportability and consistency factors" in reaching those findings.  *Woods*, 32 F.4th at 792; see 20 C.F.R. § 404.1520c(b)(2).  However, the ALJ is not required to explicitly discuss any of the remaining three factors, unless there are differing medical opinions on an issue and those opinions are equally well-supported and consistent with the record.  20 C.F.R. § 404.1520c(b)(2)-(3).  The ALJ's persuasiveness explanation must be supported by substantial evidence.  *Woods*, 32 F.4th at 792.

### A.  Medical Opinion of Nurse Liptak

On November 2, 2023, Plaintiff's primary care provider, Nurse Alayna Liptak, completed an RFC Assessment addressing Plaintiff's physical and mental limitations.  [AR 1413].

#### 1.  Nurse Liptak's Opinions on Physical Limitations

Regarding Plaintiff's physical limitations, Nurse Liptak opined that Plaintiff could carry up to ten pounds on a regular basis and less than ten pounds on a frequent basis.  *Id.*  She opined that Plaintiff could stand and walk for less than two hours during an eight-hour workday, and that he had no limitations on sitting.  *Id.*  She opined that Plaintiff could stand for thirty minutes before changing positions, and that he did not need to lie down or shift at will during workdays.  *Id.*  She opined that Plaintiff's sickle cell anemia makes exertion difficult, "due to decreased oxygen transport."  *Id.* at 1414.  Nurse Liptak opined that Plaintiff could stoop, kneel, and crouch frequently.  *Id.*  She opined that Plaintiff could occasionally crawl and climb stairs.  *Id.*  She opined that pushing and pulling cause Plaintiff shortness of breath, and that Plaintiff should avoid moderate exposure to hazards and

United States District Court
Northern District of California

heat or cold, since his conditions affect his ability to regulate temperature. *Id.* Finally, she opined that Plaintiff would be absent from work more than three times per month, and that his impairments would interfere with his concentration or pace of work for fifty percent of the workday. *Id.*

After summarizing Nurse Liptak's opinion regarding Plaintiff's physical limitations, the ALJ ultimately found the opinion to be "unpersuasive," for the following reasons:

> Ms. Liptak's opinion is not supported by and is inconsistent with the treatment notes, which indicate that the claimant is asymptomatic in terms of his sick cell disease[.] Further, the claimant has only reported only occasional dizziness/lightheadedness from hypertension…his hypertension is generally controlled with medications, and he has generally denied chest pain, shortness of breath, and headaches.

[AR 24].

Plaintiff argues, at the outset, that Nurse Liptak's opinion testimony should have been given "special care," because Nurse Liptak had been Plaintiff's treating medical provider since January 2022. [Dkt. 14 at 10-11]. In addition, Plaintiff argues that the ALJ failed to provide an adequate rationale for discounting Nurse Liptak's opinion testimony as to physical limitations. *Id.* at 8-12.

#### i.    Supportability Analysis – Physical Limitations Opinions

With regard to the supportability factor, Plaintiff argues that the ALJ improperly gave Plaintiff's testimony greater weight than Nurse Liptak's opinion when considering Plaintiff's denial of headaches, chest pain, or shortness of breath, since it is the "physician, not the patient, who has a more qualified medical understanding of what underlying conditions could be the cause of their patient's symptoms." *Id.* at 11. Plaintiff argues that Nurse Liptak's opinions that Plaintiff's having "sickle cell anemia . . . [which] makes exertion difficult due to decreased oxygen transport," and "circulation affected which affects temperature regulation and some risk for syncope," support the existence of "symptoms that limit the Plaintiff's ability to work." *Id.*

Plaintiff argues that Nurse Liptak's opinion is supported by Plaintiff's testimony that, while working as a prep cook, he became "sweaty and warm when he stood for too long, started losing weight and generally not feeling well," and being near a stove made his "heart race." *Id.* Plaintiff also relies on his testimony that, while working as a security guard, he experienced shortness of breath and would become easily fatigued. *Id.*

Plaintiff argues that the ALJ erred in finding that Plaintiff "only occasionally reported dizziness/light headedness and denied other symptoms." *Id.* Specifically, Plaintiff contends that the ALJ failed to cite instances where Plaintiff was "exerting himself or being tested to find out if he really does have shortness of breath, chest pains and headaches." *Id.* For these reasons, Plaintiff argues that the ALJ should have found that his "sickle cell anemia does in fact cause symptoms and corresponding functional impairments." *Id.*

The Court finds that the ALJ permissibly concluded that Nurse Liptak's opinion regarding Plaintiff's physical limitations was unsupported by the evidence. In evaluating supportability, the ALJ determined that "Ms. Liptak's opinion is not supported by and is inconsistent with the treatment notes, which indicate that the claimant is asymptomatic in terms of his sick cell disease," supported by Plaintiff "only report[ing] . . . occasional dizziness/lightheadedness from hypertension," and hypertension being "generally controlled with medications." [AR 24]. The ALJ noted that Plaintiff had "generally denied chest pain, shortness of breath, and headaches." *Id.*

"An ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods*, 32 F.4th at 792. In considering whether an ALJ's decision is supported by substantial evidence, the Court "must consider the entire record as a whole" and "may not affirm simply by isolating a specific quantum of supporting evidence." *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir.1989) (citation omitted).

Here, Plaintiff argues that Nurse Liptak's opinion is supported by her finding that Plaintiff has "sickle cell anemia which makes exertion difficult due to decreased oxygen transport," and "circulation affected which affects temperature regulation and some risk for syncope." [Dkt. 14 at 11]. Plaintiff also argues that the ALJ should have considered negative symptoms from Plaintiff's past work as a security guard and prep cook, where Plaintiff got "warm near the stove," "started losing weight and generally not feeling well," and "was getting short of breath quickly and easily fatigue[d]." *Id.* Plaintiff argues that his lack of self-reported symptoms from sickle cell anemia and hypertension can be attributed to his not "exerting himself" at appointments, which would be

necessary to determine whether he experienced "shortness of breath, chest pains and headaches" while in a state of exertion. *Id.*

After considering the record as a whole, the Court affirms the ALJ's finding that Nurse Liptak's proposed work-related limitations are unsupported by the evidence. While Plaintiff argues that he suffers from exertional difficulties resulting from sickle cell anemia, treatment records from Dr. Singh note that Plaintiff "denie[d] sickle cell pain crisis," and had "no complications from anemia." [AR 243]. Similarly, Dr. Landwehr notes that Plaintiff "show[ed] no blood transfusion, denied any sickle cell pain crisis episodes, [had] no episodes of acute chest or vaso-occlusive issues, [and] no eye issues." [AR 246]. In a separate evaluation by Dr. Blankenship, Plaintiff was reported as being "unaware of any issues from his [sickle cell] disease," "den[ying] any complications from anemia," and "totally asymptomatic." [AR 912-15]. Plaintiff was "never hospitalized for pain, acute chest or vaso-occlusive event," and Plaintiff's form of sickle cell anemia is "typically [] less severe than other type of sickle cell." [AR 1243].

With regard to Plaintiff's hypertension, reports from Lifelong Medical Care recorded Plaintiff's blood pressure as being "at goal," with Plaintiff "den[ying] red flags." [AR 621]. Plaintiff's blood pressure was noted to be "well-controlled at home." [AR 801]. Subsequent appointments at LifeLong resulted in blood pressure readings "at goal in office," with Plaintiff again "den[ying] red flags." [AR 1184, 1202, 1280]. While Plaintiff occasionally had blood pressure readings "above goal," his most recent reading was "below goal." [AR 1062, 1407, 1171-74]. These findings support the ALJ's conclusion that Plaintiff's hypertension was "generally controlled with medications." [AR 24].

Even considering Plaintiff's argument that it is "the physician, not the patient, who has a more qualified medical understanding of what underlying conditions could be the cause of their patient's symptoms," the aforementioned opinions of Dr. Singh, Dr. Landwehr, and Dr. Blankenship all support mild limitations in this area. Although Plaintiff may interpret the evidence differently, the physician opinions (and Plaintiff's own testimony denying complications from sickle cell anemia) support the ALJ's decision as being based on substantial evidence. "When the evidence

16

before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir.1995).

### ii.    Consistency Analysis – Physical Limitations Opinions

For the consistency factor, Plaintiff argues that Nurse Liptak's opinion is "consistent with evidence from other medical sources and nonmedical sources in the claim," such as Dr. Blankenship's March 2022 opinion stating that Plaintiff "has decreased energy, fatigue, and could not work in a kitchen given current health concerns." *Id.* at 12. Plaintiff also relies on Dr. Kurupath's acknowledgement that Plaintiff "had lost 150 pounds, and it might be related to anxiety and depression or microscopic anemia with weight loss," and that Plaintiff had "worsening fatigue, insomnia, and persistent anemia, most likely related to sickle cell disease." *Id.* Plaintiff also cites "additional treatment notes" indicating that Plaintiff was "struggling with his activities of daily living," such as "getting winded" when carrying groceries or climbing stairs. *Id.*

Plaintiff also argues that the ALJ ignored the evidence in the record which "supports Nurse Liptak's opinion that the Plaintiff's chronic back pain also affects his functioning." *Id.* Plaintiff references being "taken by an ambulance to triage section complaining of severe back pain and generalized body weakness," before being "ultimately treated for acute lower back pain at that time and elevated blood pressure," with "subsequent X-Ray imaging f[inding] evidence of posterior disc bulges at L3-4 and L4-5" and "mild sclerosis of the superior endplate of L3." *Id.*

The Court finds that the ALJ permissibly found Nurse Liptak's opinion regarding Plaintiff's physical limitations unsupported as inconsistent with the evidence. In evaluating consistency, the ALJ determined that, for the same reasons provided in the supportability evaluation, Nurse Liptak's opinion was inconsistent with Plaintiff "generally den[ying] pain, shortness of breath, and headaches," and "only report[ing] only occasional dizziness/lightheadedness from hypertension," as well as his symptoms from high blood pressure (and sickle cell anemia) being "generally controlled." [AR 24].

Here, multiple evaluations from Sutter Health reported Plaintiff as having "no headache, numbness, or tingling," and no shortness of breath or chest pain. [AR 69, 146, 725-29, 1194-95]. Similarly, Dr. Singh reported that Plaintiff denied any headaches or chest pain, and found "no

17

United States District Court
Northern District of California

significant objective evidence to support physically limiting symptoms that would preclude all types of work." [AR 224, 232]. Dr. Kurupath found that Plaintiff had "no headache, numbness, or tingling," "no chest pain," and "no shortness of breath" in 2022. [AR 509, 525, 975]. Nurse Liptak similarly reported that Plaintiff was not suffering from headaches, as did LifeLong Medical Care. [AR 584, 624-26]. Dr. Blankenship recorded that Plaintiff was not experiencing headaches or chest pain in her 2022 evaluations of Plaintiff. [AR 913, 1240-41, 1287]. Treatment records from LifeLong Medical Care show that Plaintiff denied any headaches or "chest pain either exertional or at rest," and had no cough or shortness of breath on multiple occasions. [AR 1151, 1160, 1176, 1185, 1201, 1280, 1404].

Plaintiff argues that his weight loss might be "related to anxiety and depression or microscopic anemia," and that the ALJ "completely ignores the evidence in the record which supports Nurse Liptak's opinion that the Plaintiff's chronic back pain also affects his functioning," since Plaintiff had an ambulance visit for "pain and generalized body weakness." [Dkt. 14 at 12]. Plaintiff argues that subsequent treatment for acute lower back pain, supported by an X-ray showing "posterior disc bulges at L3-4 and L4-5" and "mild sclerosis of the superior endplate of L3," is consistent with Nurse Liptak's opinion regarding Plaintiff's back pain. *Id.*

Here, an examination report from Sutter Health notes that Plaintiff was seen on February 24, 2020 for acute lower back pain. [AR 730]. However, subsequent appointments with LifeLong Medical Care recorded that Plaintiff's "upper back pain improved w/ home PT and rest," and that Plaintiff's pain was "improving but persists," with a recommendation for Plaintiff to continue physical therapy. [AR 1105, 1113]. Because the examination findings support minimal limitations from Plaintiff's back pain, the Court finds no reversible error with respect to the ALJ's determination that Nurse Liptak's opinion that Plaintiff's back pain "affects his functioning" was inconsistent with the record.

### 2. Nurse Liptak's Opinions on Mental Limitations

Regarding Plaintiff's mental limitations, Nurse Liptak opined that Plaintiff suffered from depression and anxiety, with some improvements from talk therapy. [AR 1416]. She opined that Plaintiff occasionally experienced fatigue from taking Trazadone, and that his depression and

anxiety exacerbated his "chronic pain." *Id.* She opined that Plaintiff had disturbed sleep, depressed mood, decreased energy, muscle tension, frequent fatigue, and difficulty sustaining attention. *Id.* at 1417. She opined that Plaintiff had mild limitation in the ability to learn, recall, and use information on a sustained basis. *Id.* at 1418. She opined that Plaintiff had mild and moderate limitation in the ability to concentrate and focus on tasks for a sustained period. *Id.* at 1419. Nurse Liptak opined that Plaintiff had mild and moderate limitation in the ability to adapt or manage himself on a sustained basis. *Id.* She opined that Plaintiff's depression and anxiety affected his ability to work, impaired his focus and concentration, and caused a decrease in his energy levels. *Id.* at 1420. She opined that Plaintiff's mental impairments would cause him to be absent from work for at least four days per month, and that he would be "off task" for more than thirty percent of the workday. *Id.* Finally, Nurse Liptak opined that Plaintiff's mental impairments caused him difficulty in managing appointments and seeking treatment, and that the intensity and persistence of his symptoms could be expected to fluctuate over time. *Id.* at 1421.

After summarizing Nurse Liptak's opinion regarding Plaintiff's mental limitations, the ALJ ultimately found the opinion to be "unpersuasive for the most part," because "the moderate limitations found by Ms. Liptak are not supported by and are inconsistent with the record as a whole. There is very little mental health treatment evidence and what little there is shows largely normal mental status exam findings." [AR 24]. Plaintiff argues that the ALJ failed to provide an adequate rationale for discounting Nurse Liptak's opinion testimony as to mental limitations. [Dkt. 14 at 12].

### i. Supportability Analysis – Mental Limitations Opinions

In evaluating supportability, the ALJ determined that "the moderate limitations found by Ms. Liptak are not supported by and are inconsistent with the record as a whole," because there "is very little mental health treatment evidence and what little there is shows largely normal mental status exam findings." [AR 24].

With regard to the supportability factor, Plaintiff argues that the ALJ improperly relied on "normal mental status examination findings from non-mental health related records to detract from Nurse Liptak's findings of mental limitations." [Dkt. 14 at 13]. Plaintiff further argues that the ALJ improperly relied on "normal mental status examination findings" to discount Plaintiff's

United States District Court
Northern District of California

"depression and anxiety" which make "focus and concentration difficult[]." *Id.* at 12-13. Plaintiff argues that the "record does include mental status examination findings that show the Plaintiff's mood was depressed and describe him as struggling with significant depression and anxiety." *Id.*

Here, a Sutter Health assessment plan recorded Plaintiff as having "anxiety and depression." [AR 144, 148]. However, Dr. Singh reported that Plaintiff had "no depression or anxiety," a sentiment echoed by Dr. Landwehr in his evaluation of Plaintiff. [AR 245, 247]. Dr. Blankenship opined that Plaintiff had "no depression or anxiety," while LifeLong Medical Care reported that Plaintiff had "mild" depression. [AR 691, 913, 1241]. Because the record supports the ALJ's assertion that Plaintiff's anxiety and depression "mostly" resulted in mild symptoms, the Court finds no error in the ALJ's assertion that moderate limitations are unsupported by the evidence. *See Alexander v. O'Malley*, No. 23-55213, 2024 WL 612877, at *1 (9th Cir. Feb. 14, 2024) ("Alexander contends that the ALJ erred by failing to include a functional restriction related to her mild mental limitation in his RFC determination. We, however, rejected essentially the same argument in [Woods], because the claimant identified no specific 'evidence that the ALJ failed to consider or explain.'").

### ii.    Consistency Analysis – Mental Limitations Opinions

With regard to the consistency factor, Plaintiff argues that the ALJ's analysis failed to incorporate "progress notes from the Plaintiff's former primary mental health care provider, Elizabeth Montes, AMFT who treated the Plaintiff for his major depressive disorder for nearly a year." [Dkt. 14 at 12]. Plaintiff argues that the progress notes, which state that Plaintiff "experience[s] significant anxiety that is made worse by his high blood pressure . . . feel[s] immobilized and can't do anything, feel[s] stuck trying to figure out what to do . . . [and] needs to take breaks to sit down and breathe to calm his anxiety," are consistent with Nurse Liptak's opinion that Plaintiff has "anxiety and depression that attack his ability to complete ADLs and work" and "decreased energy and motivation due to anxiety and depression that make focus and concentration difficult[]." *Id.* at 13.

The Court finds no reversible error in the ALJ's determination that Nurse Liptak's opinion regarding Plaintiff's mental limitations was inconsistent with the evidence. In evaluating

United States District Court
Northern District of California

consistency, the ALJ determined (using the same reasoning mentioned in the supportability portion of the ALJ's argument) that "the moderate limitations found by Ms. Liptak are not supported by and are inconsistent with the record as a whole," because there "is very little mental health treatment evidence and what little there is shows largely normal mental status exam findings." [AR 24].

Plaintiff argues that the ALJ should have considered progress notes from Dr. Montes consistent with Nurse Liptak's opinion when considering Plaintiff's mental limitations, particularly where Dr. Montes opined that Plaintiff has "significant anxiety," made worse by his high blood pressure, causing a need for frequent breaks. [Dkt. 14 at 5].

Here, although Dr. Montes opined that Plaintiff experienced severe instances of depression, she also recorded Plaintiff's depression as being "mild." [AR 1210]. Dr. Montes characterized Plaintiff's memory as being "grossly intact," as well as Plaintiff having generally "unremarkable" mental findings. [AR 1208]. Additional reports from Dr. Singh, Dr. Landwehr, Dr. Blankenship, and LifeLong Medical Care characterize Plaintiff's symptoms from depression and anxiety as being mild. *See* AR 245, 247, 691, 913, 1241. Because of this, the Court finds no error in the ALJ's determination that Nurse Liptak's opinion in support of moderate mental limitations was inconsistent with the evidence.

For the foregoing reasons, the Court finds that the ALJ did not err in his evaluation of the persuasiveness of Nurse Liptak's opinions and also finds that the ALJ's determination in this regard is supported by substantial evidence (particularly as to the most important factors of supportability and consistency).

### B. Medical Opinions of Dr. Singh and Dr. Landwehr

On June 19, 2022, state agency medical consultant Gurcharan Singh, M.D., completed an RFC Assessment on Plaintiff's limitations. [AR 234]. Regarding Plaintiff's limitations, Dr. Singh noted "exertion and fatigue," but opined that there was no "objective evidence to support [symptoms] . . . that would preclude all types of work." [AR 223]. Dr. Singh opined that Plaintiff had one medically determinable impairment, "Recurrent Arrhythmias," classified as non-severe, but that the impairment "does not significantly limit physical or mental ability to do basic work

United States District Court
Northern District of California

21

activities." [AR 224]. Dr. Singh found that Plaintiff had normal blood pressure "upon recheck," normal heart rate and rhythm, and no organ damage caused by hypertension. [AR 232].

On October 31, 2022, state agency medical consultant Lawrence Landwehr, M.D., completed an additional RFC Assessment on Plaintiff's limitations upon reconsideration. [AR 246, 249]. Dr. Landwehr noted several medically determinable impairments, "sickle cell anemia, gastritis, and hypertension, which could be expected to produce [Plaintiff's] alleged symptoms," however the "objective medical evidence alone [did] not substantiate the claimant's allegations about the functionally limiting effects of the symptoms." [AR 245]. Dr. Landwehr noted that, despite Plaintiff's sickle cell anemia, "the MER shows no blood transfusion . . . [or] sickle cell pain crisis episodes, no episodes of acute chest or vaso-occlusive issues, [and] no eye issues." [AR 246].

In evaluating the opinions of both state agency medical consultants, the ALJ wrote the following:

> I find the prior administrative medical findings of the State agency medical consultants, Gurcharan Singh, M.D. (Exhibits 1A; 2A) and Lawrence Landwehr, M.D. (Exhibits 5A; 6A) to be persuasive overall. Drs. Singh and Landwehr found that the claimant's physical impairments are non-severe. These assessments have support from the overall evidence of record, which indicates that the claimant has only occasional symptoms from his hypertension and is asymptomatic in terms of his sickle cell disease, as discussed above. However, viewing the evidence in the light most favorable to the claimant, I have reduced the residual functional capacity to medium exertion to account for his hypertension, which I have found to be a severe impairment.

[AR 24].

Plaintiff argues that the ALJ "failed to explain the supportability and consistency factors" in evaluating the opinions from Dr. Singh and Dr. Landwehr. [Dkt. 14 at 14]. Plaintiff takes issue with the fact that the consultants, in conducting their respective evaluations, "never examined, spoke with, or evaluated the Plaintiff beyond the limited records they were able to review." *Id.* Plaintiff argues that the ALJ "ignores the Plaintiff's other impairments, such as his LUTS, depression, BPH, fatigue, anemia, weakness, insomnia, inability to tolerate heat, dizziness, [and] shortness of breath as well as his chronic back pain and anxiety." *Id.* Additionally, Plaintiff argues that the state agency opinions are not consistent with "other evidence in the file," and are only supported by the opinions of "non-examining medical consultants." *Id.* Plaintiff argues that the ALJ erred in using the

United States District Court
Northern District of California

consultants' findings to determine that Plaintiff could perform his past work, stating that the ALJ should have considered that Plaintiff was "written up at [his] last job for taking breaks," "was unable to keep up with the physical demands of his work like standing for too long," "[was unable] to work when the kitchen was too hot," and "ultimately could not perform" in his past position as a prep cook. *Id.* at 15.

### 1. Supportability Analysis

The Court finds that the ALJ permissibly concluded that the opinions of Dr. Singh and Dr. Landwehr were supported by the record. In evaluating supportability, the ALJ determined that the opinions from the state agency medical consultants were "persuasive overall." [AR 24]. According to the ALJ, findings of non-severity from the consultants "have support from the overall evidence of record, which indicates that the claimant has only occasional symptoms from his hypertension and is asymptomatic in terms of his sickle cell disease, as discussed." *Id.*

Plaintiff argues that the evidence cited by the ALJ does not support the state agency's medical findings, because they are from non-examining physicians. [Dkt. 14 at 15]. However, medical records by non-examining physicians are not automatically assigned less persuasive weight under the revised regulations. While a "medical source's relationship with the claimant is still relevant when assessing the persuasiveness of the source's opinion," "the ALJ no longer needs to make specific findings regarding these relationship factors." *Woods*, 32 F.4th at 792. "Under the revised regulations, 'there is not an inherent persuasiveness to evidence from [government consultants] over [a claimant's] own medical source(s), and vice versa.'" *Id.* at 791. Because the ALJ was not required to evaluate Plaintiff's relationship with the medical source in making his findings, he properly weighed Dr. Singh and Dr. Landwehr's opinions, and was not required to assign them lesser weight than Nurse Liptak's opinion. "Insisting that ALJs provide a more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources." *Id.* at 792.

Furthermore, the opinions of Dr. Singh and Dr. Landwehr have support in the record. For example, Dr. Landwehr's finding that Plaintiff's sickle cell anemia did not cause functionally limiting symptoms was supported by an MER showing "no blood transfusion . . . [or] any sickle cell

23

United States District Court
Northern District of California

pain crisis episodes, no episodes of acute chest or vaso-occlusive issues, [and] no eye issues." [AR 246]. Dr. Singh's finding of minimal symptoms owing to Plaintiff's hypertension was supported by multiple instances of Plaintiff having normal blood pressure readings, normal heart rate and rhythm, and no organ damage caused by hypertension. [AR 232]. While Plaintiff argues that these records should be given less persuasive weight than "statements from . . . primary providers" cited by Plaintiff, the "ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041–42 (9th Cir. 2008); *see also Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). Because the opinions of Dr. Singh and Dr. Landwehr are supported by substantial evidence, the Court finds no error in the ALJ's supportability finding.

### 2. Consistency Analysis

The Court finds that the ALJ permissibly found that the opinions of Dr. Singh and Dr. Landwehr were not entirely consistent with the overall record. In accordance with his supportability analysis, the ALJ concluded that the opinions of Dr. Singh and Dr. Landwehr were consistent with records showing that Plaintiff was "asymptomatic in terms of his sickle cell disease." [AR 24]. The ALJ found the state agency consultants' findings of "only occasional symptoms from [Plaintiff's] hypertension," inconsistent with the record when "viewing the evidence in the light most favorable to the claimant," and "reduced [Plaintiff's] residual functional capacity to medium exertion to account for his hypertension" after concluding that it was a severe impairment. *Id.* The ALJ supported this RFC determination by citing instances where Plaintiff's blood pressure was above goal. [AR 1062, 1171].

In arguing that the ALJ should have assigned a more restrictive RFC, Plaintiff cites his own testimony regarding his past work, including that he took "too many breaks," could not "stand[] for too long," and could not work when the "kitchen was hot." [Dkt. 14 at 15]. However, while the ALJ's consistency evaluation did not refer to Plaintiff's past work testimony, the ALJ was not required to "discuss every piece of evidence." *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (citation omitted). Plaintiff fails to explain why the inclusion of past work testimony would have changed the ALJ's finding that Dr. Singh and Dr. Landwehr's respective opinions were not entirely consistent with the record. *Id.* Plaintiff has failed to show that the

24

testimony would have resulted in a different consistency finding; the Court is therefore "able to conclude from the record that the ALJ would have reached the same result absent [any] error." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012).

For the foregoing reasons, the Court finds that the ALJ did not err in his evaluation of the persuasiveness of Dr. Singh and Dr. Landwehr's opinions and, as a result, the Court finds that the ALJ's determination in this regard is supported by substantial evidence (particularly as to the most important factors of supportability and consistency).

**III.    Whether the ALJ Erred in Evaluating Plaintiff's Credibility**

As summarized above, Plaintiff's next assignment of error is based on the ALJ's asserted failure to provide "specific, clear or convincing reasons" for discounting Plaintiff's allegations and testimony relating to the severity of his physical and mental impairments.  [Dkt. 14 at 15-19]. Plaintiff thus argues that the ALJ's RFC determination is not supported by substantial evidence, because the ALJ improperly discounted Plaintiff's allegations and testimony regarding the severity of his symptoms.  *Id.*

"[S]ubstantial evidence does not support an ALJ's RFC assessment if 'the ALJ improperly rejected [the claimant's] testimony as to the severity of his pain and symptoms.'"  *Ferguson v. O'Malley*, 95 F.4th 1194, 1199 (9th Cir. 2023) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)).  The Ninth Circuit has established a two-part analysis for evaluating the extent to which a claimant's symptoms testimony must be credited.  *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017).  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Ferguson*, 95 F.4th at 1199 (quoting *Garrison*, 759 F.3d at 1014). "If the claimant meets the first step of this analysis and there is no evidence of malingering, [then in the second step] the ALJ can reject the claimant's testimony about the severity of their symptoms only by offering specific, clear and convincing reasons for doing so."  *Id.* (quoting *Garrison*, 759 F.3d at 1014-15) (alteration omitted).

The "clear and convincing" standard requires the ALJ to "specifically identify" which portions of the claimant's testimony the ALJ finds "not to be credible" and "explain what evidence

United States District Court
Northern District of California

undermines that testimony." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (quoting *Treichler*, 775 F.3d at 1102) (remaining citations omitted). "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'" *Trevizo*, 871 F.3d at 678 (quoting *Garrison*, 759 F.3d at 1014-15).

"An ALJ may consider a range of factors in assessing credibility, including '(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.'" *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1287 n.7 (9th Cir. 1996)). However, the ALJ may not "reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Smartt*, 53 F.4th at 494 (quoting *Barnhart*, 400 F.3d at 681). Nor may the ALJ "justify a credibility finding 'by ignoring competent evidence in the record that suggests another result.'" *Diedrich v. Berryhill*, 874 F.3d 634, 643 (9th Cir. 2017) (quoting *Gallant v. Heckler*, 763 F.2d 1450, 1456 (9th Cir. 1984)).

Here, as summarized above, Plaintiff alleges physical impairments of high blood pressure/hypertension, shortness of breath, and lifting limitations, as well as mental impairments impacting "focus, concentration and ability to maintain his pace." [Dkt. 14 at 16-18]. In his written decision, the ALJ found that Plaintiff's impairments could reasonably give rise to the severe pain and functional limitations to which Plaintiff testified that he suffers. [AR 23]. The ALJ thus found that Plaintiff's testimony met the first part of the Ninth Circuit's *Trevizo* test. *Ferguson*, 95 F.4th at 1199 ("First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."). Accordingly, at the second step of the *Trevizo* analysis, where the ALJ here made credibility determinations as to Plaintiff's testimony, the ALJ was required to make the legally mandated findings and offer specific, clear, and convincing reasons for rejecting Plaintiff's testimony. *Id.* Because the ALJ made no finding that Plaintiff was malingering, the ALJ was required to give "specific, clear, and convincing reasons" in support of his adverse credibility

finding. *Garrison*, 759 F.3d at 1014-15. This standard "requires an ALJ to show [their] work." *Smartt*, 53 F.4th at 499. However, the standard does not require the ALJ "to perform a line-by-line exegesis of the claimant's testimony" or "to draft dissertations when denying benefits." *Lambert*, 980 F.3d at 1277.

In his written decision, the ALJ found that Plaintiff's testimony concerning the intensity, persistence, and limiting effects of his symptoms was not consistent with the overall record. [AR 23]. As to hypertension, the ALJ determined that "while [Plaintiff's] blood pressure has been above goal at times," it has overall "been managed with medication and has been at goal," and Plaintiff "has generally denied chest pain, shortness of breath, and headaches." *Id.* The ALJ limited Plaintiff's RFC to medium work to account for his "occasional symptoms" from hypertension. *Id.* For shortness of breath, the ALJ determined that although Plaintiff "testified that he loses his breath from standing for just 5 minutes," "pulmonary exams have shown no shortness of breath and he has generally denied shortness of breath in his treatment records." *Id.* For lifting limitations, the ALJ determined that although Plaintiff testified that he "cannot lift more than 20 pounds," "the record indicates that he was helping someone push their car out of a parking lot." *Id.* Finally, the ALJ determined that, for Plaintiff's mental limitations, there was "very little mental health treatment evidence and what little there is shows largely normal mental status exam findings." *Id.* at 24.

Under applicable legal standards, the Court finds that the ALJ committed reversible error in rejecting Plaintiff's testimony as not credible and in determining that Plaintiff's testimony was inconsistent with the overall record. An ALJ may not "reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Barnhart*, 400 F.3d at 676-681. Here, the ALJ found Plaintiff's testimony regarding his hypertension symptoms inconsistent with the record because *some* of his blood pressure readings were "at goal." [AR 23]. Just because Plaintiff sometimes had blood pressure readings at goal does not justify finding that Plaintiff's testimony about his hypertension symptoms was somehow inconsistent or not credible. Taking blood pressure readings in a medical provider's office is not indicative of what happens to the blood pressure or other hypertension symptoms in a work environment (much less a medium exertion work environment). Plaintiff's testimony that he

United States District Court
Northern District of California

experiences symptoms in an exertional work environment is not inconsistent with Plaintiff having blood pressure readings that were occasionally "at goal," since the readings were taken in medical examination environments and not taken in an environment functionally or contextually similar (much less equivalent) to Plaintiff's past work environment, where he testified to experiencing symptoms. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 493–94 (9th Cir. 2015) ("We disagree with the district court that the ALJ 'identified several inconsistencies between [Brown–Hunter's] testimony and the record,' and therefore 'gave clear and convincing reasons to support' her non-credibility determination. Our review of the ALJ's written decision reveals that she did not specifically identify any such inconsistencies; she simply stated her non-credibility conclusion and then summarized the medical evidence supporting her RFC determination.").

Here, the ALJ found that Plaintiff provided objective medical evidence of an underlying impairment (essential hypertension) which might reasonably produce the pain or other symptoms alleged. [AR 23]. Further, the ALJ found that this impairment (essential hypertension) was severe. [AR 19]. Accordingly, in relying on instances where Plaintiff's blood pressure was at goal to conclude that Plaintiff's testimony as to his hypertension symptoms was inconsistent with the record, the ALJ committed error in "pick[ing] out a few isolated instances of improvement over a period of months or years . . . and treat[ing] them as a basis for concluding a claimant is capable of working." *Garrison*, 759 F.3d at 1017.

Although Plaintiff testified that "he loses his breath from standing for just 5 minutes," and "gets winded by the time he gets up the stairs or with lifting groceries," the ALJ nevertheless concluded that Plaintiff's shortness of breath was not a severe impairment, because "pulmonary exams have shown no shortness of breath and he has generally denied shortness of breath in his treatment records." [AR 23]. However, the ALJ failed to explain how Plaintiff denying shortness of breath at the time of a pulmonary examination is inconsistent with Plaintiff's testimony that he was short of breath in periods of exertion. *Id.* Again, pulmonary examinations in a medical provider's office is a different environment from standing for a length of time or from going up stairs or lifting groceries, and there is simply nothing inconsistent between denying shortness of breath at an examination as opposed to shortness of breath in an exertional work environment (much

United States District Court
Northern District of California

less a medium exertion work environment).  Indeed, the ALJ failed to explain how Plaintiff's symptoms would be affected by a work environment with varying temperatures, such as Plaintiff's past work as a prep cook.  *Id.*  As noted above, Plaintiff testified that he was unable to work "near the fire" and would "go to the cold room to take a little break."  [AR 198, 201].  Nurse Liptak's notes of an office visit, dated January 3, 2022, state that Plaintiff was "looking into alternate jobs as prep cook makes him too hot, which then causes his heart to race."  [AR 1160].  In citing to a subset of Plaintiff's medical records, which would not reasonably include the severity of Plaintiff's shortness of breath in an exertional environment, the ALJ improperly relied on "an absence of positive medical evidence to discredit [the claimant's] subjective symptom testimony."  *Smartt*, 53 F.4th at 498.

The ALJ similarly erred in rejecting Plaintiff's testimony regarding his lifting limitations. The ALJ found Plaintiff's testimony regarding his lifting limitations to be inconsistent with the record, because "the record indicates that he was helping someone push their car out of a parking lot," "which would presumably involve more than light exertion."  [AR 23].  On this issue, the ALJ assumed without any evidence in the record that Plaintiff was successfully able to push the car, that there were no other people helping push the car, and that the force exerted by Plaintiff on the car was greater than the force or exertion required to lift over twenty pounds.  The ALJ does not cite anything in the record to support this finding of alleged inconsistency.  Indeed, the record indicates that Plaintiff actually injured himself when attempting to help push the car and went to the Emergency Department for treatment. [AR 1344].  Moreover, the ALJ's findings here equate a one-time occurrence (with no evidence of the amount of actual exertion Plaintiff undertook) with the demands of regular work activities during a full working shift.  *Id.*  The ALJ also erred by failing to explain which portion of Plaintiff's testimony was contradicted by this evidence.  *See Brown-Hunter*, 806 F.3d 494-95 ("We cannot review whether the ALJ provided specific, clear, and convincing reasons for rejecting Brown–Hunter's pain testimony where, as here, the ALJ never identified which testimony she found not credible, and never explained which evidence contradicted that testimony.").

United States District Court
Northern District of California

The ALJ also failed to discuss or otherwise account for multiple instances of Plaintiff reporting severe back pain, which he alleged impacted his lifting abilities. *See, e.g.*, AR 480, 1081, 1098. The ALJ failed to account for other objective evidence in the record consistent with Plaintiff's back pain testimony, including a record that Plaintiff was brought by ambulance to the triage section of the Alta Bates Emergency Department on February 24, 2024, where Plaintiff did "complain of severe back pain and generalized body weakness." [AR 1081]. In focusing on a single instance where Plaintiff allegedly helped push a car and ignoring Plaintiff's objective history of back issues, the ALJ "justif[ies] a credibility finding 'by ignoring competent evidence in the record that suggests another result." *Berryhill*, 874 F.3d at 643.

Finally, the ALJ erred in using a "daily activity" to discredit Plaintiff's testimony, without further explanation as to how Plaintiff assisting with the car would translate to the minimal lifting limitations required over the course of a full work shift in the context of a work environment. *See Garrison*, 759 F.3d at 1016 ("We have repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day[.]"); *Francis v. Saul*, No. 2:18-cv-02589 AC, 2020 WL 5073935, at *6 (E.D. Cal. Aug. 27, 2020) ("Given the ALJ's failure to address the minimal extent of the tasks at issue and whether they are transferable, the conclusion that plaintiff's daily activities contradict his allegations regarding the intensity of her pain is not supported by substantial evidence.").

With regard to mental impairments, the ALJ also erred by finding Plaintiff's testimony regarding his mental limitations was inconsistent with the record. [AR 24]. In finding "very little mental health treatment evidence," the ALJ ignored evidence that Plaintiff was being medicated for depression. *See, e.g.*, AR 430, 604. Treatment records from LifeLong Medical Care and Dr. Montes show that Plaintiff was "continu[ing] to experience depression and anxiety symptoms," even with treatment. [AR 1216-20]. While visiting Dr. Montes, Plaintiff reported that his "symptoms have been more intense over the last few months," that he was "taking medication to help him sleep since it has been difficult to sleep due to depression," and that he was "struggling with low self-esteem

30

and motivation." [AR 1230]. Plaintiff's testimony that his depression had been "more intense over the last few months" is not inconsistent with prior findings cited by the ALJ finding minimal depressive symptoms. *Id.* Therefore, the ALJ erred by finding Plaintiff's testimony inconsistent with the record. *See Moody v. Berryhill*, No. 16-cv-3646-JSC, 2017 WL 3215353, at *10 (N.D. Cal. July 28, 2017) ("Plaintiff having a composed and 'normal' demeanor during doctor visits does not preclude her from experiencing anxiety and depression in other contexts.").

Accordingly, the Court concludes that the ALJ failed to provide sufficiently "specific, clear, and convincing reasons" for discounting Plaintiff's testimony regarding the symptoms resulting from his physical and mental impairments, including his testimony as to the existence of the symptoms as well as his testimony as to the intensity, persistence, and limiting effects of those symptoms. *Garrison*, 759 F.3d at 1014-15. Remand on these issues is, therefore, required. *See Austin v. Saul*, 818 F. App'x 725, 728 (9th Cir. 2020) ("The errors discussed above are significant enough, and sufficiently intertwined with the aspects of the ALJ's analysis that find support in the record, that we cannot conclude they were harmless.").

## IV.    Whether the ALJ Erred by Failing to Adequately Develop the Record

Plaintiff next argues reversible error because the ALJ's RFC determination was allegedly not based on substantial evidence, where the evidence in the record "supports a more restrictive RFC with additional exertional and nonexertional limitations." [Dkt. 14 at 19-23]. That is, Plaintiff argues that the ALJ failed to adequately develop the record and instead substituted his own judgment for that of a medical expert's when determining Plaintiff's RFC. *Id.* at 20. Specifically, Plaintiff argues that the ALJ failed to consider evidence in the record that "supports a more restrictive RFC with additional exertional and nonexertional limitations" by deciding that Plaintiff could return to his past relevant work as a short order cook at step four of the evaluation process. *Id.*

Plaintiff argues that the ALJ should have considered Plaintiff's difficulties at his last job due to him taking additional breaks. *Id.* at 21. Plaintiff also argues that the ALJ did not properly weigh testimony by the vocational expert, who testified that Plaintiff's past work included no transferable skills, that two additional five-minute breaks per workday would preclude a person in Plaintiff's

31

position from full-time work, and that a person in Plaintiff's position having to leave work thirty minutes early once a month would preclude full-time work. *Id.* at 22; *see* AR 214-15.

In response, the Commissioner argues that the ALJ "reasonably discounted Plaintiff's allegations of debilitating mental limitations, and reasonably found several medical opinions unsupported and inconsistent with the record evidence." [Dkt. 16 at 12]. The Commissioner argues that the ALJ was not required to consider evidence "from opinions the ALJ found unpersuasive, or from alleged limitations that the ALJ reasonably rejected." *Id.*

"Social security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000). An ALJ is obligated "to fully and fairly develop the record and to assure that the claimant's interests are considered." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). "This duty extends to the represented as well as to the unrepresented claimant." *Id.* However, "[a]n ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) (quoting *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001)); *see Brown v. Berryhill*, 697 F. App'x 548, 549 (9th Cir. 2017) ("Because the record evidence was not ambiguous and the record was sufficient to allow for proper evaluation of the evidence, the ALJ was not required to re-contact Brown's doctors or further develop the record.").

The Court has reviewed the record in this case and concludes that, here, the ALJ committed reversible error because the ALJ substituted his own judgment for that of a medical professional's in determining Plaintiff's RFC, particularly in concluding that Plaintiff could return to his past relevant work at step four of the analysis.

The ALJ erred in evaluating the vocational expert's testimony. At the hearing, the vocational expert testified that a hypothetical individual in Plaintiff's situation would be precluded from full-time work if they had to take two additional five-minute breaks in addition to the usual and customary breaks. [AR 214-15]. The vocational expert testified that an employee in Plaintiff's position who had to regularly leave work thirty minutes early would be precluded from full-time work, even if the absence occurred only once per month. *Id.* The vocational expert testified that,

United States District Court
Northern District of California

with the additional breaks included, someone in a comparable position to Plaintiff would not be able to perform any full-time work if they had to be absent three times per month.  [AR 216].

At the hearing, Plaintiff testified to leaving his past work early up to two times per month.  [AR 200].  Plaintiff testified to taking up to two additional breaks per workday, and that he would regularly have to "sit within [his] shift in the kitchen" or "go to the cold room to take a little break and come back out." [AR 201].  Per the vocational expert's testimony, Plaintiff would be precluded from full-time work if he continued to need multiple breaks and continued to need to leave work early at the same rate as he alleges to have done in his past work.  [AR 214-16].  Since the vocational expert's testimony indicates that Plaintiff would be unable to perform his past work (or any full-time work) given these limitations, and because the ALJ's finding of non-disability at step five was contingent on finding that Plaintiff could return to his past work at step four, the extent and nature of Plaintiff's breaks and the extent and nature of Plaintiff's need to leave work early multiple times per month were "dispositive to the ultimate disability determination in light of the vocational expert's hearing testimony." *Brown-Hunter*, 806 F.3d at 496.

As such, it was legal error for the ALJ to fail to address this inconsistency without fully developing the record.  Remand as to these issues is required as well.

**V.  Whether to Remand for an Award of Benefits**

With regard to requested relief, Plaintiff asks the Court to remand the case for the payment of benefits, or alternatively, for further proceedings.  [Dkt. 14 at 28-29].

When a court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th. Cir. 2004) (citations omitted).  A remand for award of benefits is proper, however, where (1) "the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion;" (2) "the record has been fully developed and further administrative proceedings would serve no useful purpose;" and (3) "if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017) (citation omitted).  Even if all three requirements are

United States District Court
Northern District of California

United States District Court
Northern District of California

satisfied, the Court retains flexibility to determine the appropriate remedy. *Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015).

The Court finds that remand for further proceedings is most appropriate here. The first factor is met because the ALJ failed to provide sufficient legal reasons for discrediting Plaintiff's symptoms testimony. The second factor is not met, however, because further proceedings are necessary so that all of the medical evidence that is entitled to credit, and all of Plaintiff's impairments, may be considered in formulating an appropriate RFC. Based on the vocational expert's testimony, it would appear that the third factor would be met because the uncontroverted testimony (if credited) indicates that Plaintiff would be precluded from full-time work if he continued to need multiple breaks and continued to need to leave work early at the same rate as he alleges to have done in his past work. However, because of the issues discussed above requiring remand, it is not clearly established on the current record what would constitute an appropriate RFC and whether there are any jobs in the economy for an individual with such an RFC. "Where, as in this case, an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency." *Treichler*, 775 F.3d at 1105.

Accordingly, the Court determines that the appropriate result here is to remand for further proceedings. While a reviewing court is "not required to credit claimants' allegations regarding the extent of their impairments as true merely because the ALJ made a legal error in discrediting their testimony," here "the record raises crucial questions as to the extent of [a claimant's] impairment given inconsistencies between his testimony and the medical evidence in the record." *Brown-Hunter*, 806 F.3d at 495 (citation omitted). "[T]hese are exactly the sort of issues that should be remanded to the agency for further proceedings." *Treichler*, 775 F.3d at 1101.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED THAT:**

1. The Commissioner's final decision is **REVERSED** and this case is **REMANDED** to the Commissioner for further administrative proceedings consistent with this Order.

2. Plaintiff is awarded costs pursuant to Federal Rule of Civil Procedure 54(d)(1).

**IT IS SO ORDERED.**

Dated:  March 23, 2026

_____
PETER H. KANG
United States Magistrate Judge

United States District Court
Northern District of California

35